# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06-30017 |
| ) | |
| ROBERT MCINTIRE, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter is before the Court for Report and Recommendation regarding Defendant Robert McIntire's Motion to Suppress Evidence Derived From Unlawful Execution of a Search Warrant (d/e 9) (Motion to Suppress). See Text Order, dated March 28, 2006. For the reasons set forth below, I recommend that the Motion to Suppress be denied.

On May 3, 2005, a search warrant was issued by a state court judge in Adams County, Illinois, commanding the search of McIntire's residence. located at 522 Jackson Street, Quincy, Illinois and the seizure of cannabis, proof of residency and U.S. currency. Motion to Suppress, Ex. C. The Sworn Complaint for the search warrant was signed and sworn by Officer Lee Mangold of the Quincy Police Department. Id., Ex. A (Sworn

Complaint).  Attached to and incorporated into Officer Mangold's sworn statement was an affidavit by a confidential informant (CI), identified only as "Jane Doe."  Id., Ex. B (Jane Doe Affidavit).  In the Jane Doe Affidavit, the CI states that she had been in McIntire's residence within the 72 hours prior to the affidavit.  The CI further states that, while inside McIntire's residence, she observed what appeared to be several pounds of a green leafy substance which she knew to be cannabis based on the fact that she had used cannabis on numerous occasions and was familiar with its appearance and smell.  The CI stated that she had purchased cannabis from McIntire on several occasions in the past from inside the residence.  The CI noted that she identified McIntire's residence to Officer Mangold in a drive-by and identified a photograph of McIntire as the person from whom she had purchased cannabis at the residence in the past.

The Jane Doe Affidavit is incorporated into Officer Mangold's sworn statement requesting a search warrant which sets forth the following facts: (1) Mangold met with Jane Doe within the 48 hours preceding his statement and she provided him with the information set out in the Jane Doe Affidavit; (2) another officer ran a criminal history check of McIntire which revealed an outstanding non-extraditable probation violation warrant

out of Oregon for a previous conviction for manufacturing a controlled substance; and (3) Mangold received information in the past from confidential sources that McIntire was involved in selling methamphetamine.  Mangold stated that he believed the information provided by Jane Doe to be correct.  Specifically, Mangold stated that he knew marijuana to be a green leafy substance as described by Jane Doe, that he conducted a drive-by in which Jane Doe identified McIntire's residence, and that Jane Doe identified McIntire in a photograph.

According to information provided by the Government in response to inquiry by this Court, both Officer Mangold and the CI personally appeared before the issuing judge in connection with the application for the search warrant.  <u>Government's Response to the Court's Order for Clarification (d/e 15)</u> (Government's Clarification), p. 2.  At that time, the issuing judge made inquiries of the CI, involving the CI's identity, background, and the contents of the Jane Doe Affidavit.  <u>Id</u>.  In a search of McIntire's residence pursuant to the May 3, 2005 warrant, law enforcement officials allegedly found and seized marijuana plants and methamphetamine.  The instant charges were filed as a result of this search and seizure.

McIntire has filed a motion to suppress all of the evidence obtained as a result of the May 3, 2005 warrant. As an initial matter, McIntire asserts that the information contained in the Complaint and the Jane Doe Affidavit was insufficient to establish probable cause. In the alternative, McIntire seeks a hearing under Franks v. Delaware, which, in limited circumstances, allows a defendant to obtain a hearing to challenge an allegedly false affidavit used to obtain a search warrant. See Franks, 438 U.S. 154 (1978). As set forth below, neither argument is persuasive.

A. Probable Cause

"A search warrant affidavit establishes probable cause when it sets forth facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime." United States v. Jones, 208 F.3d 608 (7th Cir.2000) (internal quotations and citations omitted). The Supreme Court has not defined probable cause, holding that whether probable cause has been established varies with the facts of each case. Ornelas v. United States, 517 U.S. 690, 696 (1996). A reviewing court defers to the warrant-issuing judge's determination of probable cause if there is substantial evidence in the record to support the decision to issue a warrant. United States v. Koerth, 312 F.3d 862, 865 (7th Cir. 2002). The

issuing judge's decision to issue a warrant must "be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, fails to allege specific facts and circumstances to allow the judge to reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." Id. at 866-67 (internal quotations and citations omitted). Based on the information presented to the Court, including the Government's Clarification, the Court strongly believes that the information presented to the issuing state court judge is sufficient to support a finding of probable cause.[1]

The Court must examine the totality of the circumstances to determine whether the information presented to the issuing judge on its face established probable cause. See Illinois v. Gates, 462 U.S. 213, 230-39 (1983). When the warrant affidavit is supported by information provided by a confidential informant, the totality-of-the-circumstances analysis includes several factors, as follows: "(1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the

---

[1] The Court notes that McIntire represented in his Reply in Support of Motion to Suppress (d/e 13) that there is no need for a hearing on the issue of probable cause. McIntire has not indicated to the Court that his position on this issue has changed following the filing of the Government's Clarification. The Court believes that the issue can be decided based on the parties' submissions.

informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and police officer's application for the search warrant."  Koerth, 312 F.3d at 866.  "The court should also consider whether the informant personally appeared and presented an affidavit or testified before the magistrate, thus allowing the judge to evaluate the informant's knowledge, demeanor, and sincerity."  Id. (citing United States v. Reddrick, 90 F.3d 1276, 1281 (7th Cir. 1996)).

In the instant case, it is clear that the information provided by the CI is essential to the probable cause determination.  McIntire asserts that the information provided by the CI was uncorroborated, lacking in detail, and stale.  McIntire relies on United States v. Peck, in which the Seventh Circuit held that the evidence presented was insufficient to support a finding of probable cause.  Peck, 317 F.3d 754 (7th Cir. 2003).  In Peck, a CI who had not previously given information to the police told police that she had been inside the defendant's residence within the last two days and that, at that time, the defendant had shown her large amounts of crack cocaine and marijuana wrapped in individual packages.  Id. at 755.  The CI stated that the defendant represented the substances to be crack and marijuana and

further that she recognized the substances as such based on her own "personal experience." Id. The CI signed a sworn affidavit attesting to these facts before the issuing judge, but did not offer any testimony. Id. at 757. The police ran a check of Peck's record, which revealed a prior arrest for drug possession. This was the only effort by the police to corroborate the CI's information. Id.

In reaching its conclusion that the evidence presented was insufficient to support a finding of probable cause, the Peck Court noted that the CI's information lacked detail, specifically pointing out the lack of information about where the drugs were hidden, the total amount of drugs, the frequency with which the defendant sold drugs, or characteristics of the defendant himself other than the fact that he was a "black male." Peck, 317 F.3d at 756. The Court noted that the CI failed to explain how she knew that the substances were illicit drugs and that the CI failed to make any statements against her interest. Id. The Court further noted the weak nature of the police corroboration. Id. at 757. The Court distinguished Peck's case from others in which the police took steps in addition to a record check which included driving by the defendant's residence with the CI, asking the CI to pick the defendant out of a photo line up, and

confirming vehicle registration.  Id.  Finally, the Court noted that, while the CI appeared before the issuing judge and signed a sworn statement, she did not provide any testimony.  Id.

The instant case is distinguishable from Peck.  In the instant case, the CI had been in McIntire's residence within the 72 hours prior to the affidavit, which is not an unreasonably long amount of time given the statement in the Jane Doe Affidavit that the CI had purchased cannabis from McIntire in the residence on several occasions in the past.  The CI stated that, while inside McIntire's residence, she observed a green leafy substance which she knew to be cannabis based on the fact that she had used cannabis on numerous occasions.  While the CI did not state where the cannabis was located within the residence, she did state that there appeared to be pounds of it.  The CI made further statements against her interest in that she stated that she had purchased cannabis from McIntire on several occasions in the past from inside the residence.  The CI identified McIntire's residence to Officer Mangold in a drive-by and identified a photograph of McIntire as the person from whom she had purchased cannabis at the residence in the past.  The police ran a background check of McIntire which revealed a prior controlled substance

conviction. The CI provided a sworn affidavit attesting to the information she provided. Additionally, the CI appeared before the issuing judge, who made inquiries of the CI relating to her identity, background, and the contents of her affidavit.

The instant case is factually similar to United States v. Jones, in which the Seventh Circuit held that, under the totality of the circumstances, the evidence presented was sufficient to support a probable cause finding. See Jones, 208 F.3d 608. In Jones, the CI gave information based on personal observations that was specific, detailed, and against her personal interest. Id. at 605-06. The police corroborated the CI's information by allowing the CI to identify the residence in a drive-by with officers, conducting a vehicle registration search on cars parked in the driveway, and running a background check on the defendant. Id. at 607-08. The Seventh Circuit concluded its analysis by stating

> And perhaps most importantly in this case, Jane Doe appeared at the probable cause hearing and was subject to questioning by the issuing judge. [W]hen a CI accompanies the officer and is available to give testimony before the judge issuing the warrant, his presence adds to the reliability of the information used to obtain the warrant, because it provides the judge with an opportunity to assess the informant's credibility and allay any concerns he might have had about the veracity of the informant's statements.

Id. at 609 (internal quotations and citations omitted).

In the instant case, the CI gave fairly detailed statements that were based on personal observation, and she also made statements against her interest. The police took multiple steps to corroborate her information. Significantly, in addition to signing a sworn affidavit, the CI appeared before the issuing judge and was questioned by him. Therefore, under a totality-of-the-circumstances analysis, the information presented to the issuing state court judge is sufficient to support a finding of probable cause. Defendant's request to suppress evidence for lack of probable cause should be denied.

Even assuming that the information presented to the issuing state court judge was insufficient on its face to support a finding of probable cause, the Supreme Court's decision in United States v. Leon would defeat McIntire's request for suppression. Leon, 468 U.S. 897 (1984). In Leon, the Supreme Court held that the exclusionary rule does not bar evidence obtained by law enforcement officials acting in reasonable reliance on a search warrant issued by a neutral and detached magistrate. Id. at 913. In order to invoke the Leon exception, the Government must present evidence that law enforcement officials acted in good faith in relying on the

warrant. Id. at 924. The fact that Officer Mangold presented the Sworn Complaint to the judge is prima facie evidence that the officers were acting in good faith. See Koerth, 312 F.3d at 868. Thus, McIntire must present evidence to rebut this prima facie showing. McIntire may do so by showing: (1) that the issuing judge wholly abandoned his judicial role and acted as a mere rubber stamp for law enforcement; or (2) that Officer Mangold submitted an affidavit so lacking in indicia of probable cause as to render the officer's belief in its existence entirely unreasonable. Leon, 468 U.S. at 923.

McIntire makes no claim that the issuing judge was a rubber stamp. Thus, the Court turns to the issue of Officer Mangold's reliance. An officer's good faith reliance is evaluated in light of clearly established legal principles in existence at the time. To rebut the prima facie showing of good faith, McIntire must show that:

> (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer "would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."

Koerth, 312 F.3d at 869 (quoting Malley v. Briggs, 475 U.S. 335, 345

(1986)).

McIntire fails to identify any case that has held that a materially similar affidavit failed to establish probable cause. As set forth above, Peck, upon which McIntire relies, is factually distinguishable. Nor is the information that was submitted to the issuing state court judge plainly deficient. As set forth above, it is the opinion of this Court that the information is sufficient to establish probable cause.

B. Franks Hearing

In the alternative, McIntire seeks a Franks hearing to challenge the veracity of the information used to obtain the search warrant. In order to secure a Franks hearing, McIntire must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155-56. He "must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." United States v. Souffront, 338 F.3d 809, 822 (7th Cir. 2003) (internal citation and quotation omitted). If McIntire makes the required

showing of intentional or reckless falsehood, a hearing must be granted only if the affidavit would be insufficient to establish probable cause without the false statement. Id.

The Seventh Circuit has noted that it is clear under Franks "that affidavits supporting a search warrant are presumed valid, and that the 'substantial preliminary showing' that must be made to entitle the defendant to an evidentiary hearing must focus on the state of mind of the warrant affiant, that is the police officer who sought the search warrant." Jones, 208 F.3d at 607 (citing Franks, 438 U.S. at 171). To make the required substantial preliminary showing, McIntire "must offer evidence showing either that the warrant affiant lied or that the warrant affiant recklessly disregarded the truth because he in fact entertained serious doubts as to the truth of his allegations or had obvious reasons to doubt the veracity of the allegations." Id.

In the instant case, McIntire has completely failed to meet his burden. McIntire alleges that the CI lied about the amount of marijuana and, unless she was one certain named female, about being in his residence 72 hours prior to signing the affidavit. McIntire concedes that he has no evidence to show that Officer Mangold knew about the alleged lies of the CI. Rather he

contends that Officer Mangold acted recklessly in relying on the CI's information. McIntire offers no evidence or even specific allegations relating to Officer Mangold's alleged recklessness. As set forth above, the record reveals that Officer Mangold took multiple steps to corroborate the CI's information, he had the CI attest to her information in a sworn affidavit, and he presented the CI to the issuing judge. McIntire asserts that Officer Mangold was reckless in relying on the CI's information "where there was no explanation for why a controlled purchase could not be done." Motion to Suppress, p. 5. The fact that McIntire identifies something additional that could have been done does not detract from the numerous things that Officer Mangold did do to test the CI's information. See Jones, 208 F.3d at 607. There is nothing in the record that would support a finding that McIntire made a substantial preliminary showing that would entitle him to a Franks hearing. Therefore, I recommend that McIntire's request for a Franks hearing be denied.

      THEREFORE, as set forth above, I recommend that McIntire's Motion to Suppress Evidence Derived From Unlawful Execution of a Search Warrant (d/e 9) be DENIED.

IT IS THEREFORE SO ORDERED.

ENTER: May 18, 2006

FOR THE COURT:

s/ Byron G. Cudmore

_____
BYRON G. CUDMORE
UNITED STATE MAGISTRATE JUDGE